IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

WHITE ELECTRICAL SERVICES, INC.,   )
   )
     Plaintiff,   )
   )
v.   )  Case No. 09-CV-504-CVE-PJC
   )
FRANKE FOOD SERVICE SYSTEMS, INC.,   )
   )
     Defendant.   )

## OPINION AND ORDER

This matter is before the Court on Defendant Franke Food Systems, Inc.'s ("Franke") Motion to Strike certain opinions and expert testimony by Plaintiff's expert, Margaret Kelsay ("Kelsay"), and to strike the expert report and testimony of Dr. Marcus Durham ("Durham") [Dkt. No. 65].

### I
### *Background*

White Electrical Services, Inc. ("WES") has sued Franke seeking to recover some $925,000 that WES paid in settlement of an underlying lawsuit, *Sarah Austin v. White Electrical Systems, Inc. and Morrison Construction Co.*, Case No. CJ-05-7423 (Oklahoma County District Court) ("the underlying lawsuit"). In July 2002, Morrison Construction hired WES to install the interior and exterior wiring and receptacles at a McDonald's restaurant in Choctaw, Oklahoma. In the underlying lawsuit Sarah Austin alleged that she was injured when she received an electrical shock while working at the McDonald's. She contended that WES had negligently wired the restaurant and failed

1

to install a Ground Fault Circuit Interrupter on the food preparation table.  Among the witnesses scheduled to testify in the underlying action were Kelsay and Durham.

The underlying lawsuit was filed in September 2005 and dismissed with prejudice -- pursuant to the parties' settlement – in December 2008.  WES then filed this lawsuit in August 2009 contending that Franke is liable under a contribution theory.  WES seeks to use in this case the reports/memos that Kelsay and Durham prepared for use in the underlying action.[1]   Franke's motion seeks to strike these reports and preclude any testimony from Kelsay or Durham.

**(A)** *Margaret Kelsay.*

Kelsay is a rehabilitation counselor who met with Austin in May 2007 in order that Kelsay could prepare a Vocational Assessment and Life Care Plan.  In October 2007, Kelsay produced her Preliminary Vocational Assessment Life Care Plan ("Preliminary Assessment") in which Kelsay opined that Austin "has no reasonable labor market access and is 100% permanently and totally vocationally and economically disabled."  [Dkt. No. 65-3 at 10].  Kelsay estimated that Austin's current and future medical needs would cost $1.54 million over her lifetime.  [*Id.* at 24].  Apparently, unbeknownst to WES, Kelsay prepared a final Vocational Assessment and Life Care Plan ("Final Assessment") of Austin on Nov. 20, 2007.[2]  Kelsay's opinion of Austin's

---

[1]      Since the underlying action was filed in Oklahoma County District Court, the reports prepared by Kelsay and Durham were not governed by Fed. R. Civ. P. 26(a)(2)(B).

[2]      Counsel for WES represented at a hearing on August 20, 2010, that WES never saw this Final Assessment until Kelsay's deposition in the instant case.  Thus, WES's decision to settle the underlying action could not have been influenced by the Final Assessment.

employment possibility did not change.  [Dkt. No. 65-5, Ex. 4 at 10].  Kelsay's estimate of life time medical cost increased to $1.83 million.  [*Id*. at 24].

WES listed Kelsay as an expert witness in the current action and in February 2010 produced Kelsay's Preliminary Assessment to Franke as her expert report.   However, at Kelsay's deposition on June 15, 2010, the witness announced that her opinions were contained in the Final Assessment and that she didn't even have the Preliminary Assessment in her file anymore.  [*Id.* at 8].  Kelsay went through the two Assessments and indicated where they differed.

(B) *Marcus Durham.*

In the underlying action, WES sponsored Durham as an expert electrical engineer who examined the cause of Austin's electrical shock.  Durham prepared a two-and-a-half page "Trip Memo" on September 13, 2008, based on his inspection four months earlier of the restaurant where Austin was injured.  [Dkt. No. 65-6].  Durham opined that WES had fulfilled all of its obligations under the Oklahoma electrical code and its contract. [Dkt. No. 65-6 at 2].  In February 2010, Durham prepared a one-page "Supplemental Memo" outlining additional opinions for use in this case.  [Dkt. No. 65-7].  WES also produced a complete copy of Durham's deposition in the underlying action [Dkt. No. 73-2], a full curriculum vitae [Dkt. No. 73-3], a list of cases in which Durham testified [*Id.*], a statement of Durham's fees and his rate schedule [*Id.*], and Durham's file [*Id.*] including photographs he took at the site, notes and reference material.  Durham was deposed in this case on May 19, 2010.  At his deposition, Durham stated that his Trip Memo and Supplemental Memo were not Rule 26 reports,

that not all sources for his opinions were noted in the memos, and that he had never

been asked to prepare a Rule 26 report for this case.  [Dkt. No. 65-8 at 40, lines 6-15].

Franke filed its Motion to Strike on July 27, 2010, six days after the discovery

cutoff.  [Dkt. No. 59].  Motions in limine are due Aug. 25.  [Dkt. No. 69].  Pretrial

conference is set for Sept. 28, 2010, and jury trial is scheduled to begin Oct. 18, 2010.

[Dkt. No. 59].

## II
### *Applicable Legal Principles*

Federal Rule 26(a)(2) requires that each expert witness prepare and sign a written

report containing his/her opinions as well as other pertinent information.  The Rule

requires the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the data or other information considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ .P. 26(a)(2)(B)(i)-(vi).[3]

---

[3]      At a hearing held August 20, 2008, Defendants agreed that Plaintiffs' expert reports met the requirements of Rule 26 insofar as listing qualifications, publications, cases testified in and

These directives are "mandatory." *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49, 59 (1st Cir. 2001). A litigant who fails to comply with these requirements does so at his own peril. Rule 37(c)(1) bars the use of a witness or information that was not disclosed as required by Rule 26(a) or (e) unless the offending party can establish that the failure to comply with the Rule is either substantially justified or harmless. *Kern River Gas Transmission Co. v. 6.17 Acres*, 156 Fed. Appx. 96, 101 (10th Cir. 2005). Determination of whether a violation of Rule 26(a) is justified or harmless is left to the broad discretion of the trial court. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The fundamental test is whether the report is sufficiently complete that surprise is eliminated, unnecessary depositions are avoided and costs are reduced. *Dunkin' Donuts, Inc. v. Patel*, 174 F.Supp.2d 202, 211 (D.N.J. 2001) (*quoting Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)). The court should consider the following factors: (1) prejudice or surprise to the party against whom the report is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and, (4) the moving party's bad faith or willfulness. *Woodworker's Supply*, 170 F.3d at 993.

### III
### *Discussion*

Defendant contends Kelsay has abandoned her Preliminary Assessment in favor of the Final Assessment that was not timely provided to Franke. Franke also argues that the preliminary report that WES did produce is incomplete and has been

compensation. Thus, the only issue before the Court is the experts' compliance with the requirements of Rule 26(a)(2)(B)(i) and (ii).

superceded by the Nov. 2007 report, and asks the Court to strike Kelsay's vocational assessments and bar her from testifying at trial.  In its response, WES states that it does not intend to use Kelsay as an expert witness, and only seeks to have her authenticate her Preliminary Assessment/Life Care Plan to establish that the $925,000.00 settlement that WES agreed to in the underlying action was reasonable.   Thus, WES now states that Kelsay will not be called as an expert witness at all, but only to authenticate the Preliminary Assessment that was part of WES's considerations in deciding to settle the underlying action.

Franke contends that Durham failed to provide a Rule 26 expert report and, thus, should not be allowed to testify.  Defendant relies heavily on Durham's own testimony that the "Trip Memo" and "Supplemental Memo" he prepared were not Rule 26 expert reports.  Plaintiff contends that Durham does not determine what is or is not a Rule 26 report and that the Memos that Plaintiff produced, together with other supporting material are sufficient to meet Plaintiff's obligations under Rule 26.

The Court finds that there is little substantive difference between Kelsay's Preliminary Assessment and her Final Assessment of Austin.  However, since WES only considered the Preliminary Assessment in making its decision to settle the underlying action, the Final Assessment is irrelevant to this action.

While WES identified Kelsay as its expert witness in this case, WES now says that it is not offering her as an expert.  At the Aug. 20 hearing counsel stated that Kelsay would be offered only to authenticate her Preliminary Assessment.  WES says it will offer Kelsay's report to show the magnitude of Austin's claimed damages in the

underlying case to show that WES's decision to settle that case for $925,000 was reasonable. Franke has prepared its own expert to challenge the findings in Kelsay's Preliminary Assessment.

The Court finds that Kelsay may not testify as an expert witness on behalf of WES. Wes has conceded this point. Kelsay may only authenticate her Preliminary Assessment.

WES plans to call Durham as an expert electrical engineer to testify as to WES's role in the electrical work at the restaurant in question. Durham has not prepared a true Rule 26 report. Instead, he has written two memos that list his conclusions and often cite to the 2002 Electrical Code. These memos do not meet the standards of Rule 26. The purpose of a Rule 26 report is to offer a complete list of the opinions the expert witness is expected to sponsor, as well as the underlying data and analysis supporting those opinions. *See Cohlmia v. Ardent Health Services* LLC, 254 F.R.D. 426, 432 (N.D. Okla. 2008). The key consideration is whether the expert report is sufficiently detailed and complete so that the opposing party can depose the witness and avoid surprise at trial. *Dunkin' Donuts*, 174 F.Supp.2d at 211. Here, however, in addition to the two memos, WES provided Franke with the full deposition that Durham gave in the underlying case. In that deposition Durham further identified his opinions after visiting the restaurant. [Dkt. No. 73-2 at pp. 13-14]. On May 19, 2010, without complaint, Franke's attorneys deposed Durham in this case. Again, without any complaint that Durham's materials were inadequate, Franke waited five months after receiving Durham's expert materials – after discovery cutoff – to raise any objection.

Courts have held that by waiting in this manner a party waives its objection to the sufficiency of an expert report. *See Richman v. Sheahan*, 415 F.Supp.2d 929, 940 (N.D.Ill. 2006); *Harvey v. District of Columbia*, 949 F.Supp. 874, 877 (D.D.C. 1996) (report would not be excluded when moving party waited until day before discovery cut-off to challenge report). Under these circumstances, this Court concludes the same.

Evaluating the totality of material provided to Franke, the Court concludes that Durham has met the test of Rule 26. While the Trip Memo and the Supplemental Memo alone may not have satisfied the Rule, the addition of the entire deposition taken in the underlying case provided an ample expansion of Durham's opinions and the bases therefor. Franke made no complaint about the sufficiency of Durham's expert report until after discovery cutoff. This is strong evidence that Franke felt the information provided was sufficient. Finally, by waiting for more than five months to complain, Franke has waived any objection to the completeness of Durham's materials.

## IV
### *Summary*

For the reasons set forth above, Franke's Motion to Strike [Dkt. No. 65] is **GRANTED IN PART AND DENIED IN PART.** It is GRANTED in that Kelsay is stricken as an expert witness for WES and will be limited to authentication of her Preliminary Assessment report. It is DENIED in that the Court finds the materials submitted on behalf of Durham sufficiently advised Franke as to his opinions and the basis therefor and because Franke waived its objection to the completeness of Durham's materials by waiting five months, until close of discovery, to register any objection.

**IT IS SO ORDERED** this 24th day of August 2010.

Paul J. Cleary
United States Magistrate Judge